```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                FOR THE MIDDLE DISTRICT OF ALABAMA

 3                          EASTERN DIVISION

 4

 5  UNITED STATES OF AMERICA

 6       vs.                    CASE NO.:  3:10cr14-WKW

 7  PEDRO RODRIGUEZ-PALMA,

 8         Defendant.

 9

10                      * * * * * * * * * *

11                     SENTENCING PROCEEDINGS

12                      * * * * * * * * * *

13

14          BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES

    DISTRICT JUDGE, at Montgomery, Alabama, on Wednesday, October 6,
15
    2010, commencing at 2:21 p.m.
16
    APPEARANCES:
17
    FOR THE GOVERNMENT:      Ms. Susan R. Redmond
18                           Assistant United States Attorney
                             OFFICE OF THE UNITED STATES ATTORNEY
19                           131 Clayton Street
                             Montgomery, Alabama  36104
20
    FOR THE DEFENDANT:       Mr. Timothy Charles Halstrom
21                           Attorney at Law
                             4170 Lomac Street, Suite A
22                           Montgomery, Alabama  36106

23  ALSO PRESENT:            Mr. Rafale Carrillo, Interpreter
    (via telephone)
24
                    Proceedings reported stenographically;
25                      transcript produced by computer.
```

1       (The following proceedings were heard before the Honorable

2        W. Keith Watkins, United States District Judge, at

3        Montgomery, Alabama, on Wednesday, October 6, 2010,

4        commencing at 2:21 p.m.:)

5      (The interpreter was previously duly sworn)

6      (All responses by the defendant are through the interpreter)

7          THE COURT:  All right.  We're here for the sentencing

8   of Pedro Rodriguez-Palma in 10cr14-6.  For the record in this

9   case, will the government please repeat your appearance.

10          MS. REDMOND:  Yes, Your Honor.  Susan Redmond for the

11   United States.  Seated at counsel table observing is AUSA Monica

12   Stump.  And in the courtroom is Agent -- DEA Agent Tom Halasz.

13          THE COURT:  All right.  And for the defendant?

14          MR. HALSTROM:  Your Honor, Tim Halstrom for Pedro

15   Rodriguez-Palma.  And Mr. Rodriguez is present.

16          THE COURT:  Good afternoon.

17          Good afternoon, Mr. Rodriguez-Palma.

18          THE DEFENDANT:  Good afternoon, Judge.

19          THE COURT:  It appears that a plea agreement pursuant

20   to 11(c)(1)(C) has been reached in this case.  Will the

21   government please state the terms of the plea agreement.

22          MS. REDMOND:  Yes, Your Honor.  And for the record,

23   that is issue -- excuse me.  That is document 111 in the record.

24          The government's provisions under the 11(c)(1)(C) plea

25   agreement are that the government agrees that a two-level

1   reduction pursuant to two -- 3E1.1(a) should be given by the

2   Court for the defendant's acceptance of responsibility.  The

3   government agrees to file for the additional third level down

4   pursuant to 3E1.1(b) if the defendant continues to accept

5   responsibility.  If the defendant completes his obligations

6   contained within the cooperation agreement, we agree to move at

7   sentencing for a downward departure pursuant to United States

8   Sentencing Guideline 5K1.1 and Title 18 of the United States

9   Code, Section 3553(e), to reflect the defendant's substantial

10  assistance.

11        The defendant, Your Honor, agreed to plead guilty to

12  counts one and two of the indictment, to cooperate with the

13  government, and to waiver of appeal and collateral attack.  He

14  also -- and excuse me.  To include, Your Honor, waiver of 2255

15  petitions with the exceptions of prosecutorial misconduct,

16  ineffective assistance of counsel, or should the government

17  appeal the sentence in the case.

18        The only other thing I would add as a salient point of

19  the plea agreement is that at page 7, the defendant indicates

20  his understanding of removal and deportation proceedings in his

21  particular case as impacted by his guilty plea and sentence.

22        THE COURT:  Has the defendant complied with the terms

23  of the plea agreement?

24        MS. REDMOND:  He has.

25        THE COURT:  Mr. Halstrom, did the government accurately

1    state the terms of the plea agreement?

2         MR. HALSTROM:  Yes, Your Honor.

3         THE COURT:  And has the government complied with its

4    provisions?

5         MR. HALSTROM:  Yes.  Pending the motions that were

6    stated.

7         THE COURT:  All right.  The motion for acceptance of

8    responsibility has not been made.

9         MS. REDMOND:  That is correct, Judge.  And I

10   apologize.  The government at this time moves for a one-level

11   down in the guidelines estimated by the Court for this defendant

12   pursuant to United States Sentencing Guideline 3E1.1(b) for

13   acceptance of responsibility.

14        THE COURT:  The motion is granted.  This defendant will

15   receive a three-level reduction for acceptance of

16   responsibility.

17        The Court has considered the plea agreement and

18   considers it a reasonable agreement in this case and accepts the

19   plea agreement.

20        Before we get to the objections, you also have a 5K

21   motion for a two-level reduction, document number 187, I

22   believe.  Let me be sure.  Yes, document 187.  Does the

23   government need to put on any evidence with respect to that

24   motion?

25     (This portion of the transcript has been filed under seal

1      pursuant to the Court's oral order)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11          THE COURT:  All right.  Well, the motion is granted for

12   a two-level -- a departure of two levels.

13          Now, Mr. Halstrom, have you and your client had an

14   opportunity to review the presentence report?

15          MR. HALSTROM:  Yes, Your Honor, we have.

16          THE COURT:  Are there objections?

17          MR. HALSTROM:  Yes, Your Honor, there are.

18          THE COURT:  How many?

19          MR. HALSTROM:  Well, I've stated in my formal

20   objections seven, but they're actually limited I think now to

21   two.  We withdraw our objection number one with respect to the

22   total amount of marijuana involved, which also relates directly

23   to objection number two.  We want to discuss with the Court our

24   objection to the gun enhancement, and I'll address that in a

25   moment.  And also, we have filed a motion or an objection to the

1    Court regarding the adjustment of the role in the offense.

2    The -- and then I'll address that in a moment too.

3          Let me clear up the objections.  Objection number five

4    is a calculation objection which will be resolved by the Court

5    when it makes its determination on any of the others.  And also,

6    so is number five and objection number six.  Objection number

7    seven was I think taken care of by the amended report of the

8    probation officer and therefore is withdrawn.

9          So we're really dealing with objection number three,

10   which deals with the gun enhancement, and objection number four,

11   which is a role-in-the-offense argument.

12         THE COURT:  Okay.  Well, go ahead with your gun

13   objection.

14         MR. HALSTROM:  Well, Your Honor, we don't have a whole

15   lot more, just a few other things to discuss with the Court that

16   Mr. Duraski raised.  It may be of benefit to the Court if we

17   could adopt those arguments rather than restating them, but I

18   will restate them for the record if the Court --

19         THE COURT:  I think for the record, for the clarity of

20   the record, you probably should.

21         MR. HALSTROM:  Okay.  Your Honor, the gun enhancement

22   involves a Derringer that was possessed by Mr. Crowell, a

23   codefendant in this case, upon his arrest.  We contend that this

24   possession of this particular firearm, a Derringer, was not

25   connected with the offense.  The application note to USSG 2D1.1

1  provides that the adjustment of the two-level enhancement should

2  be applied if the weapon was present unless it is clearly

3  improbable that the weapon was connected with the offense.

4       We make the argument that the weapon that was possessed

5  during -- at the time of Mr. Crowell's arrest was a -- a

6  Derringer that he admittedly kept on his person for the

7  protection of himself.  And it was something he kept all the

8  time.  It was not related directly to this particular offense.

9  It was something that he happened to have with him.

10      This is a two-year conspiracy, Your Honor.  And at no

11 time during this conspiracy was a weapon ever produced in view

12 of any of the codefendants.  There is no paperwork.  There is

13 no -- even an allegation that a weapon was used to enforce or

14 enhance their operation in this conspiracy.

15      Mr. Crowell is a businessman who owned this particular

16 shop that -- he let it out for profit to be used for the

17 unloading and repackaging of the marijuana.  He -- in the

18 statement, he was to open the gate.  And if he was needed

19 further, he would receive a call.  He was on the scene at the

20 time of the arrest and did have the Derringer in his pocket.

21      I think the arguments are that by the case law that's

22 been produced -- and the only applicable issue in the -- I

23 believe it's the *Hall* case is that it had to be used in

24 furtherance of the conspiracy.  We do not believe that in this

25 particular case there was any showing that this weapon was used

1  or this firearm was used in furtherance of the conspiracy.

2  Again, it was a two-year-long conspiracy.  No one, no one, had

3  ever seen a weapon of any sort, much less the Derringer that was

4  involved.

5       Again, Mr. Crowell had a permit for the -- the

6  firearm.  It was licensed.  It was basically a constitutional

7  right to hold it as long as he's not holding it in illegal

8  purposes.  And illegal purpose here would be in furtherance of a

9  crime.  We don't think there's any evidence to show that.  We

10  think that the evidence -- and it's certainly beyond dispute.

11  The only evidence here is Mr. Crowell's statement that he did

12  not use it.  He didn't state specifically I did not use it in

13  furtherance of the conspiracy, but he states the purpose of the

14  firearm or the Derringer that he had in his pocket was for his

15  protection 24-7, had nothing to do particularly with this

16  particular conspiracy.

17       We would also like to point out for the Court that an

18  enhancement in this particular case is a -- I was going to say a

19  double barrel, but a two-edged sword, let's say, because not

20  only does the enhancement go two levels, but because of this

21  particular enhancement, it harms Mr. Rodriguez-Palma because he

22  would not receive the benefits of any drug treatment, outside

23  the drug treatment itself, for time off because there's a gun

24  involved.  It's my understanding of the law in prison if you're

25  convicted of a gun offense or there's a gun offense involved in

1    your sentencing, then you will not get that credit for time

2    served.  So there's a double push on this particular one, which

3    is particularly, I guess, meaningful to this particular

4    defendant.

5            He has indicated a drug problem.  He does want the drug

6    program that the department of -- the Bureau of Prisons has, but

7    he'd also like to be able to receive credit for that program.

8    And I don't think it is if the gun is used as an enhancement.

9            I think those are in essence our arguments on it, Your

10   Honor.

11           THE COURT:  Any arguments from the government?

12           MS. REDMOND:  Judge, the government has filed a -- for

13   lack of a better, a sentencing recommendation in this case.

14   That's at document 189 for the record.

15           While -- and if I could, there were two things I

16   believe Mr. Halstrom proffered to the Court that I think are

17   inaccurate.  The first is that while a -- there is no evidence

18   that a firearm was ever seen by anybody in the scope of this

19   conspiracy with the exception of Mr. Crowell.  A weapon itself

20   was used, because there was an indication where -- or there was

21   an incident in which there was an assault of a member of the

22   conspiracy, and that was done with a blunt object.  And I

23   believe it was a baseball bat -- I'm sorry -- a pipe.

24           The second thing I wanted to clear up is this is not a

25   two-year conspiracy.  It's a four- or five-year conspiracy.

1          The government, Judge, in its recommendation or,

2   rather, its sentencing memorandum, essentially stated the same

3   facts.  Mr. Crowell had the .38 Derringer in the pocket of

4   his -- in his pants pocket.  There's no indication or evidence

5   and the government has none to provide to the Court that any

6   other member of the conspiracy, past or present, had any

7   knowledge that Mr. Crowell was in possession of that firearm.

8   However -- and Mr. Crowell's statement is in fact that he had

9   the firearm for his own protection.

10          The only thing the government would argue to the Court

11  or state for the purposes of the record is that case law,

12  Eleventh Circuit, has established the three-part test.  And that

13  three-part test would be that the Court determine that the

14  possessor is charged as a coconspirator -- excuse me -- as a

15  coconspirator -- in this case, Mr. Crowell is -- that the

16  coconspirator is found to have possessed the firearm in

17  furtherance of the conspiracy, and third, that the defendant was

18  a member of the conspiracy at the time of the possession of the

19  firearm.

20          The only element in question, then, would be number

21  two.  And courts have held that when a drug -- a person engaged

22  in drug activity is in possession of a firearm for his own

23  protection while that activity is taking place, it is

24  permissible for the Court to make a determination or a finding

25  that the gun was possessed in furtherance of the drug

1   trafficking activity as protection of one's self is sufficient.

2          The two other points I'd like to make, Judge, is that

3   the government has also taken the position that in

4   Mr. Rodriguez-Palma's case, safety valve should be given in this

5   case, not only as to the statutory safety valve, but also to the

6   guideline safety valve, that being a reduction of two levels.

7   And that is set out in the PSR at paragraph 32, which

8   effectively moots the two-point enhancement for the

9   codefendant's possession of the firearm.

10          The last point the government would make, Judge, is

11  that pursuant to 3553(a) factors and the Court's finding in the

12  case of Francisco Rodriguez, it would seem that it would be

13  incumbent upon the Court to make a finding that the firearm that

14  was possessed by Mr. Crowell in Mr. Francisco Rodriguez's case

15  is the same firearm possessed by Mr. Crowell in

16  Mr. Rodriguez-Palma's case.  And as such and under and pursuant

17  to the factors of 3553(a), the Court should, it seems to me,

18  make the determination that the two points is appropriate -- is

19  appropriately given to Mr. Rodriguez-Palma in this case.

20          MR. HALSTROM:  May I respond to just a couple items,

21  Your Honor?

22          THE COURT:  A couple items.

23          MR. HALSTROM:  Thank you.  I want to make it absolutely

24  clear to the Court that my client had nothing to do with the

25  blunt instrument attack upon one of the codefendants years

1    before that, just to make sure.

2         THE COURT:  I saw that in your sentencing report.  I

3    don't know what you're talking about.  There's no evidence

4    before me of any attack by any blunt instrument.  There's

5    nothing in the PSR about it.  I don't know what that's about.

6         MR. HALSTROM:  I also object to the term "moot" or

7    offsetting one enhancement with a reduction.  It makes a great

8    deal of difference to Mr. Rodriguez-Palma that he gets the

9    two-level reduction for the safety valve.  In addition, the gun

10   should not apply in his particular case.

11        And the last argument made by counsel for the

12   government, we would -- we ask the Court to revisit

13   Mr. Francisco Rodriguez's sentence if in fact the Court finds

14   our arguments persuasive.  I agree that the gun should be an

15   equal factor in all.  And if the Court finds our arguments

16   persuasive, then it ought to revisit the sentence imposed with

17   Francisco Rodriguez that he receive the enhancement.

18        One last point.  Mr. Crowell's participation in this

19   particular conspiracy involved the use of his property.  He was

20   to open the gate and allow them in.  But for his lingering, this

21   wouldn't be an issue, because the gun was always in his pocket

22   for his own protection.  It was not there to further the

23   conspiracy.  He was supposed to leave, and they were to call him

24   if they needed him for anything further.  No one knew that he

25   had a gun so that he would come back for some sort of protection

1    purposes.  It was only if they had some problem with the

2    property or the gate or this sort of thing.  He was supposed to

3    be gone.  It's just a -- a matter of a total coincidence that he

4    happened to stay there at the time the law enforcement officers

5    arrove -- arrived.  Had he left, we wouldn't be talking about a

6    gun, because there was no furtherance of this gun in the

7    conspiracy.

8              THE COURT:  All right.

9         (Off-the-record discussion)

10             THE COURT:  All right.  I decline to revisit the issue,

11   and I kind of want to resolve it for this case.  Mr. -- who had

12   the gun?  What was his name?

13             MR. HALSTROM:  Crowell.

14             MS. REDMOND:  Mr. Crowell.

15             THE COURT:  -- Crowell had two businesses there, and

16   one of those businesses was dealing drugs.  This was not the

17   only time.  He carried the gun all the time to protect himself

18   and his business.  He not only opened the gate to allow a whole

19   truckload of bales of marijuana in on this occasion and three or

20   four other occasions, but he assisted and was seen by agents

21   assisting in unloading of this truck with this gun in his

22   pocket.  That is in furtherance.  The gun was present at a time

23   that the conspiracy was -- that activities in furtherance of the

24   conspiracy were being conducted, including with your client

25   being present and unloading the truck, as I understand it.

1          So under *U.S. v. Hall*, the burden shifts -- if the gun

2    is present, the burden shifts to the defendant to prove that

3    it's clearly improbable by a preponderance of the evidence that

4    the weapon was not used in furtherance of the offense.  And the

5    Court declines to make that finding.  It has not been

6    established to this Court's satisfaction by a preponderance of

7    the evidence that it was clearly improbable that the gun was not

8    used in furtherance of the conspiracy.  Mr. Crowell was

9    protecting himself while he was unloading the truckload of

10   marijuana with your client.

11         Now, do you have other objections?

12         MR. HALSTROM:  Yes, Your Honor.  Objection number four

13   involves Mr. Rodriguez-Palma's role in the offense.  The

14   presentence report identifies him as a minor participant.  We

15   contend that he was in fact a minimal participant, and I think

16   the government concludes as much in their sentencing memorandum.

17         In Application Note 4 to 3B1.2 of the sentencing

18   guidelines, it defines the minimal participant, which would

19   equate to a four-level reduction, as one who is plainly among

20   the least culpable of those involved in the conduct of a group.

21         Mr. Rodriguez-Palma was clearly the least culpable of

22   all these individuals.  He participated in this particular

23   activity to do nothing but to arrive there.  They actually

24   loaded the truck in Houston, unloaded it in Phenix City.  He

25   participated in one prior one, which brings his amount level a

1  little bit higher.  It was a half level or a half amount more.

2  He knew nothing about the actual structure of the conspiracy.

3        And I think this is a salient point.  Had he known more

4  about the inner -- inner workings of this conspiracy, he would

5  have been able to divulge more.  He was free and open with

6  everything that he -- his own involvement.  Had he given more

7  information, he would have gotten more substantial assistance.

8  And here, what we're doing is giving more credit for those who

9  are more involved and less credit for the individual who knows

10 nothing.  Knowing nothing about this conspiracy other than the

11 physical labor that he provided for it I think qualifies him as

12 a minimal participant, and he should get a four-level reduction

13 on that basis.

14       THE COURT:  Does the government have a response?

15       MS. REDMOND:  Judge, if I could ask if Probation has

16 any recommendation as to -- based on the argument as to minor

17 versus minimal role?

18       PROBATION OFFICER JOHNSON:  Your Honor, I believe my

19 presentence report is correct that he should have a minor role.

20 I believe he is less culpable than the other codefendants but

21 that his participation on more than one occasion does not

22 justify minimal role.

23       MS. REDMOND:  I can't say I disagree with Probation,

24 Your Honor.

25       THE COURT:  All right.

1          MR. HALSTROM:  Well, Your Honor, if I may, I think the

2    government has disagreed in their sentencing memorandum that he

3    is a minimal participant.  And I -- let me just state -- and

4    this may also go to the ultimate sentencing type thing that the

5    Court must make on a low-end, high-end.  But he was recruited in

6    Houston, Texas, to go and assist.  He was in dire straits.  He

7    is an undocumented worker.  He's not a legal citizen of the

8    United States.  He's supporting a family.  He didn't have the

9    money, and he committed a crime.

10          He is a level I, category I offender, hasn't had any

11   other prior convictions.  His -- his role in this offense was

12   simply a laborer.  There was no organizational activity

13   involved.  There was no substantive support involved.  That

14   clearly identifies him as a minimal participant.  And I strongly

15   urge the Court to consider his involvement in relationship to

16   the other individuals in this conspiracy.  And it's clear that

17   he qualifies under the definition of the sentencing guidelines

18   as a minimal participant.

19          THE COURT:  All right.  I've considered your arguments

20   and the recommendation of Probation with respect to this

21   argument.  3B1.2, comment note four, states that under the

22   minimal participant provision, the defendant's lack of knowledge

23   or understanding of the scope and structure of the enterprise

24   and of the activities of others is indicative of a role as a

25   minimal participant.  It is intended that the downward

1    adjustment for minimal participant be used infrequently.

2           According to other statements of coconspirators in the

3    instant offense, there was more than one occasion that your

4    client was involved in to unload, weigh, and repackage

5    marijuana.  It was a substantial amount of marijuana.  So it was

6    on more than one occasion.  It was a substantial amount.  There

7    was other activity involved.  It's not like we're talking about,

8    you know, small amounts of marijuana or sale amounts.  This is

9    trafficking amounts.

10          And I find that defendant's prior participation does

11   not reflect a lack of knowledge as to the overall scope of the

12   enterprise and activities of the others involved.  So I agree

13   with Probation that a minimal role adjustment of minus two is

14   appropriate here in this case, and that objection is overruled

15   as well.

16          MR. HALSTROM:  Your Honor, if I might, not to be

17   argumentative, but the Court can split the difference, if it

18   chooses to, to find that he's not just a minor, not minimal, but

19   could give the defendant in this case a three-level reduction.

20   And I would ask for that.

21          THE COURT:  Nice try.  You're being a lawyer and I'm

22   being a judge.  It's denied.  I acknowledge that argument is a

23   correct argument.

24          All right.  Any other objections?

25          MR. HALSTROM:  None, Your Honor.

1          THE COURT:  All right.  Does the government have any

2    objections to the presentence report?

3          MS. REDMOND:  No, Your Honor.

4          THE COURT:  Now I'll give you the guidelines

5    calculations.  In compliance with Justice Breyer's majority

6    opinion in *Booker*, this Court, while not bound to apply the

7    guidelines, has consulted them and has taken them into account

8    on the issue of the appropriate range of sentence to be imposed

9    in this case.  Having ruled on the objections to the presentence

10   report, the Court adopts the factual statements contained in the

11   presentence report with specific findings that the offense level

12   prior to granting the 5K motion is 25, the criminal history

13   category is I, the guideline range is from 57 to 71 months, the

14   supervised release period is from three to five years, and the

15   fine range is from 10,000 to $4 million.

16          Furthermore, because the Court has granted the

17   government's motion for downward departure based on substantial

18   assistance, the Court finds that the offense level is 23, the

19   criminal history category is I, the guideline range is from 46

20   to 57 months, supervised release period is from three to five

21   years, and the fine range -- Windy, does that continue at 10,000

22   to $4 million?

23          PROBATION OFFICER JOHNSON:  Yes, sir.  But I believe

24   the supervised release range stays the same at no less than four

25   years on each count.

1          THE COURT:  All right.  So the supervised release

2    period is no less than four years on each count.

3          In view -- I know that you have your objections, but

4    having overruled your objections, do you dispute these

5    calculations?

6          MR. HALSTROM:  No, Your Honor.  We're talking about 46

7    to 57?

8          THE COURT:  That's where we wound up.  Yes.

9          Does the government dispute the calculations?

10         MS. REDMOND:  No, Your Honor.

11         THE COURT:  All right.  Now, let's take just a break

12   here.  We're running a little bit over, and I need to ask

13   Mr. Carrillo, the interpreter -- we probably have about six or

14   eight minutes to go here, Mr. Carrillo.  Is there any reason

15   that you couldn't stay with us?

16         THE INTERPRETER:  No, Your Honor.  I'm fine.  Thank

17   you.

18         THE COURT:  Okay.  Thank you so much.

19         All right.  At this point, I will ask the defendant and

20   Mr. Halstrom, as counsel, whether either you or your client have

21   anything to say -- or both of you have anything to say in

22   mitigation or otherwise before the Court pronounces sentence.

23         MS. REDMOND:  Judge, I apologize.  There was one other

24   thing that I think we need to make clear for the record.  The --

25   it seemed to me that the defendant met the requirements or the

 1   criteria of Title 18, 3553(f).  And the language of that statute

 2   says that if the Court makes the determine (sic) that the

 3   criteria is met, the Court shall make the finding that safety

 4   valve is granted in the case.

 5        THE COURT:  That's implicit in my findings of the -- in

 6   my calculations, but the statute does require that.  And I do

 7   find this defendant does qualify for safety valve treatment and

 8   gets -- therefore avoids the statutory minimum in this case.

 9        PROBATION OFFICER JOHNSON:  Excuse me, Your Honor.

10   With that being said, the supervised release would be three to

11   five years.  I'm so sorry.

12        THE COURT:  All right.  That's the way I had it

13   originally.

14        PROBATION OFFICER JOHNSON:  Yes, sir.  Sorry about

15   that.

16        THE COURT:  Both before and after the 5K; is that

17   correct?

18        PROBATION OFFICER JOHNSON:  Yes, sir.

19        THE COURT:  All right.  Now, then -- so the record is

20   corrected that the supervised release period is not less than

21   four years in both counts.  Now, then --

22        MS. REDMOND:  Judge, I think it impacts -- once the

23   Court grants the 3553(f), I think the "not less than four years"

24   is impacted.  I think it then becomes three to five because it

25   becomes a guideline sentence.

1          Is that a correct statement, Probation?

2          PROBATION OFFICER JOHNSON:  Yes, sir.  It's three to

3   five.

4          THE COURT:  Yes, ma'am.

5          PROBATION OFFICER JOHNSON:  Yes, ma'am.  And it's three

6   to -- three to five years because 18 U.S.C. 3553(f) applies with

7   the safety valve.

8          THE COURT:  So I said it right the first time.

9          PROBATION OFFICER JOHNSON:  Yes, sir.  You said it

10  right the first time.  I stand corrected.

11         THE COURT:  Okay.  Then the record is again corrected

12  to say that in both counts, the supervised release period is

13  from three to five years and the Court had it right the first

14  time.

15         MS. REDMOND:  Agreed, Your Honor.

16         THE COURT:  All right.  I think this is the time for

17  you and your client to speak.

18         MR. HALSTROM:  Thank you, Your Honor.  And I'll take a

19  few minutes of the Court's time here.  As stated earlier,

20  Mr. Pedro Rodriguez-Palma is here illegally.  He has got a

21  family in Houston, Texas.  I have contact -- regular contact

22  with his wife, very concerned about his predicament, very

23  disturbed about the conduct.  Mr. Pedro Rodriguez-Palma has been

24  very cooperative with me from the very beginning about this case

25  and his involvement in it.

```
 1          His -- there is no excuse for criminal conduct.  We

 2   don't intend to make an excuse for criminal conduct.  Sometimes

 3   there's an explanation for it and full responsibility needs to

 4   be taken and the consequences are exacted.  This is a -- a poor

 5   economic situation where he made a desperate act in attempts to

 6   support his family.  Again, not by way of excuse, but further

 7   explanation of that.

 8          His -- I want to remind the Court of what I stated

 9   earlier, that his cooperation with the government comes with

10   some dire consequences to himself and his family.  Based on

11   that, I feel a low -- the bottom end of the guidelines is very

12   appropriate in Mr. Rodriguez-Palma's case and ask the Court to

13   consider -- consider that.

14          THE COURT:  Anything from the government?

15          MS. REDMOND:  Judge, the only other information the

16   government believes you need to be made aware of is that the

17   defendant is subject to deportation upon completion of his

18   sentence.

19          THE COURT:  Okay.  Mr. Rodriguez-Palma, do you have

20   anything to say?

21          THE DEFENDANT:  Well, the only thing I can say is that

22   I ask you to forgive me for what I did.  I'm unemployed, I'm

23   undocumented, I have children to support, and I committed a huge

24   crime.  I ask you to consider all this.  I don't have any

25   documents.  I need to support my family.  And I really thank you
```

1    for -- for hearing me out.  I'm very repentant of this.  Please

2    forgive me.  And thank you.  I did --

3             THE INTERPRETER:  Correction by the interpreter.

4             THE DEFENDANT:  I did this without thinking it

5    through.  I wasn't thinking.

6             THE COURT:  Okay.  Thank you, Mr. Rodriguez-Palma.

7             Having considered the sentencing guidelines and

8    evaluated the reasonableness of a sentence through the lens of

9    Section 3553, it is the judgment of the Court that you are

10   hereby committed to the custody of the Federal Bureau of Prisons

11   to be imprisoned for a total term of 46 months.  The Court

12   determines that the low end of the guidelines is appropriate.

13   This sentence will be 46 months for each count to be served

14   concurrently.

15            Having considered the guideline computations and taken

16   them under advisement, the Court finds that the sentence imposed

17   is sufficient but not greater than necessary to comply with the

18   statutory purposes of sentencing.  Furthermore, I find it to be

19   reasonable when considering the nature and circumstances of the

20   offense and the history and characteristics of this defendant,

21   to reflect the seriousness of the offense and to promote respect

22   for the law, to provide just punishment for the offense, and to

23   avoid unwarranted sentence disparities among defendants.

24            The defendant -- the Court recommends that the

25   defendant be designated to a facility where intensive drug

1   treatment is available.  I also recommend that you be designated

2   to a facility where vocational and educational training are

3   available.

4         Upon release from imprisonment, you shall be placed on

5   supervised release for a term of three years.  The term consists

6   of three years in count one and three years in count two to run

7   concurrently.

8         Within 72 hours of release from custody, you shall

9   report to the probation office in the district to which you are

10  released.  While on supervised release, you shall comply with

11  the mandatory and standard conditions of supervised release on

12  file with this Court.

13        I also order the following special conditions.  You

14  shall participate in a program of drug testing administered by

15  the United States Probation Office for substance abuse, which

16  may include testing to determine whether you have reverted to

17  the use of drugs.  You shall contribute to the cost of any

18  treatment based on ability to pay and the availability of

19  third-party payments.  You shall submit to a search of your

20  person, residence, office, or vehicle pursuant to the search

21  policy of this Court.

22        In light of your illegal status, upon completion of the

23  term of imprisonment, you shall be remanded to the custody of

24  the Bureau of Immigration and Customs Enforcement for

25  deportation proceedings in accordance with the Immigration and

1   Nationality Act.  If deported, the term of supervision shall be

2   nonreporting while you live outside the United States.  You

3   shall not illegally reenter the United States.  And if you

4   should reenter the United States during the term of supervised

5   release, you shall report to the nearest probation office within

6   72 hours of arrival.

7          You shall pay to the United States District Court Clerk

8   a special assessment fee of $200, which is due immediately.

9   Based on your inability to pay, the Court waives the imposition

10  of a fine.  And I find there is no identifiable victim who

11  incurred a financial loss as a result of this offense.

12         Are there any other -- are there any objections to the

13  sentence or to the manner in which the Court pronounced it?

14  First from the government.

15         MS. REDMOND:  No objections.

16         THE COURT:  From the defendant?

17         MR. HALSTROM:  None, Your Honor.

18         THE COURT:  All right.  The sentence, then, is ordered

19  imposed as stated.

20         Mr. Rodriguez-Palma, pursuant to the plea agreement,

21  you have waived most of your appeal rights, but you have

22  retained the right to appeal within 14 days under certain very

23  limited circumstances set out in your plea agreement.  If you

24  cannot afford the cost of an appeal, you have the right to apply

25  for leave to appeal *in forma pauperis*.  In other words, you may

1    apply to proceed with your appeal at no cost to you.

2           Mr. Rodriguez-Palma, I wish the best for you.  You are

3    now remanded to the custody of the United States Marshal.

4           This hearing in this particular defendant's case is

5    adjourned.  We will take a ten-minute recess, at which time we

6    will then undertake Mr. Holland's sentencing.

7           And Mr. Carrillo, thank you for joining us.  I hope you

8    have a good day.

9           THE INTERPRETER:  Likewise, Your Honor.  Have a great

10   day.

11          THE COURT:  Thank you.

12      (Proceedings concluded at 3:00 p.m.)

13                      * * * * * * * * * *

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2          I certify that the foregoing is a correct transcript

3   from the record of proceedings in the above-entitled matter.

4          This 13th day of January, 2011.

5

6                                    /s/ Risa L. Entrekin
                                     Registered Diplomate Reporter
7                                    Certified Realtime Reporter
                                     Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25